## MONGE ET AL. V. ZECHINI ET AL.

## APPEAL from the District Court of San Juan, Section 1.

### No. 507.—Decided June 9, 1911.

NULLITY OF EXCHANGE OF PROPERTY OF MINORS—ACTION OF EJECTMENT—PAR-TITION AND ADJUDICATION OF PROPERTY.—The plaintiffs in this case having acquired ownership of the lands they seek to recover by virtue of the partition and adjudication made to each of them in the division of the estate of their predecessor in interest, in accordance with section 1068 of the old Civil Code and 1035 of the present, they have sufficient title to recover the estate, subject matter of this action.

ID.—PARTITION OF INHERITANCE OF MINORS—JUDICIAL APPROVAL.—According to article 1060 of the Spanish Civil Code, which was in force at the time the partition in question was made, when the minors are under the *patria potestas* and represented in the partition by the father or the mother in a proper case, judicial intervention and approval are unnecessary. Article 1048 of the old Law of Civil Procedure, which exacted such requirements in cases similar to the one at bar, was modified by article 1060 of the old Civil Code above cited.

ID.—INCAPACITY OF CONTRACTING PARTIES—ALLEGATION OF INCAPACITY BY PARTY WITH CAPACITY—ESTOPPEL.—Even presuming that judicial intervention and approval were necessary in the partition of the estate of the plaintiff's predecessor in interest, the defendant, who contracted with the plaintiffs, cannot, in accordance with section 1269 of the Revised Civil Code, plead the lack of that requisite to profit by the omission thereof.

ID.—INCAPACITY OF CONTRACTING PARTIES—ALLEGATION OF INCAPACITY BY PRIN-CIPAL OF AGENT WHO MAKES CONTRACT.—Not even those defendants who did not intervene directly or personally in the partition of the estate of the plaintiffs' predecessor in interest, but who did so through one of the defendants as agent, can allege the incapacity of the plaintiffs to make the contract of exchange executed with them.

ID.—JUSTIFIED REASONS OF UTILITY OR NECESSITY—POWER OF FATHER OR MOTH-ER TO ALIENATE PROPERTY OF MINOR CHILDREN.—In accordance with section 164 of the Civil Code in force at the time of the acquisition of the lands, subject matter of this suit, which is 229 of the Revised Civil Code, neither the father nor the mother can alienate the real property of the child the usufruct or administration whereof pertained to them, or encumber the same except for justified reasons of utility or necessity, without the author-ization of the judge of the district wherein they are domiciled, after first hearing the *fiscal* thereof.

ID.—RECORD IN REGISTRY—RECORDING OF VOID CONTRACTS.—The record in the registry of the order of approval of dominion title of properties acquired by the defendants by virtue of a void contract of exchange does not, in accordance with article 33 of the Mortgage Law, give validity to said contract.

ID.—NULLITY OF DOMINION-TITLE PROCEEDINGS—FAILURE TO NAME REAL PUR-CHASER.—Dominion-title proceedings, wherein it is stated that the part of

the estate to which the proceedings refer was acquired by purchase from a certain party, without stating that the purchase was made from such party as the legal representative of his minor children, are null and void.

ID.—NULLITY OF RECORD PRODUCED BY NULLITY OF CONTRACT.—A contract of exchange of real property being void for lack of capacity to alienate, and the alienation having been declared void, the record thereof in the registry of property is also null.

ID.—THIRD PARTIES—Persons who have intervened in the prosecution of dominion-title proceedings and who have contracted with the plaintiffs herein, the latter not having the capacity to contract, cannot plead the character of third parties.

ID.—RECIPROCAL RESTITUTION OF THINGS AND FRUITS THEREOF—PROFITS RECEIVED BY INCAPACITATED CONTRACTING PARTY.—A contract of exchange of real property belonging to minors having been declared void, and the recovery thereof having been sustained, the plaintiff minors are not bound to make restitution to the defendants, since it has not been shown that they profited by the exchange.

ID.—PRESCRIPTION AS TO PERSONS PRESENT—GOOD FAITH AND JUST TITLE.—The requisites of good faith and just title of possession as to persons present not existing, dominion of the property detained is not acquired by prescription on the lapse of 10 years.

ID.—RECOVERY OF PART OF ESTATE—DIVISION OF ESTATE—SEGREGATION OF PART RECOVERED.—The recovery of an estate which has become part of another of larger area having been decreed, both of which are recorded in the registry as one estate, to effect delivery of the part recovered it is necessary to divide the estate in accordance with section 409 of the Civil Code and to segregate therefrom the part recovered.

The facts are stated in the opinion.

*Mr. José G. Torres* for appellants.

*Mr. Eugenio Benítez Castaño* for respondents.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

On March 6, 1909, Juan del Carmen Monge y Agosto, in his own right and as judicial defensor of his minor sisters, Valeriana and Mercedes, of the same surnames, filed a complaint in the District Court for the Judicial District of San Juan against Antonio, María, Angela, and Josefina Zechini y Veve, praying that the defendants be adjudged to return to the plaintiffs 13.68 *cuerdas* of land detained by them, which are the property of the plaintiffs by virtue of inheritance from their father, Juan del Carmen Monge, comprised in an estate of 27.89 *cuerdas* and which the defendants have recorded in their favor in the registry of property. They

also prayed that the defendants be adjudged to pay $1,500 as indemnity for the products of the lands detained, and the costs of the litigation.

For the purpose of securing the execution of such judgment as may be rendered with respect to the return of the 13.68 *cuerdas* of land, the plaintiffs also request that, so far as relates to said land, the dominion title proceedings instituted by the defendants be declared null, and that the division of the estate recorded be decreed so that delivery of their share therein may be made.

The defendants, Antonio, Angela, and Josefina Zechini y Veve, in answering the complaint on April 29 following, requested that it be dismissed in its entirety. They also filed a counterclaim against the plaintiffs praying that, should the complaint prosper, the latter be adjudged to reimburse the Succession of Zechini in the sum of $6,000, which includes the value of an estate of 50 *cuerdas,* and $625 spent by the defendants in acquiring, by exchange, the lands that the plaintiffs seek to recover, the products of said lands from 1895 to 1905, and the interest on the $625.

Later, on August 31 of the same year, they supplemented their answer by alleging that, since in 1897, they acquired the land, subject matter of this action, in good faith and by title of exchange with Cruz Agosto, and that they had already acquired dominion of said lands by prescription, in accordance with section 1858 of the Revised Civil Code.

The trial having been held, the court rendered judgment on October 11, 1909, declaring that the plaintiffs had no right to recover from the defendants the property in litigation, and dismissed the counterclaim, which had been filed, to abide by the result of the complaint, each party to pay their own costs.

An appeal was taken from said judgment by the plaintiffs, who prayed for the reversal thereof and that another be rendered in accordance with the prayer of the complaint.

From the pleadings of the parties, combined with the

probatory elements brought forth at the trial, the conclusions reached are:

First. That Juan del Carmen Monge died in the town of Río Grande on February 5, 1895.

Second. That by judicial decree of February 22, 1897, his legitimate children, Pedro and Tomás, had by his first marriage with Asunción Rivera, also his legitimate children, Julia Monserrate and Eulalia, had by his second marriage with Dionisia Jiménez; his natural children, Antonio Ramón, Juan Isaac, Mercedes, Esteban, and Valeriana, had by Cruz Agosto Negrón; his grandchildren, Jesús María, Esperanza, Eugenia, Enrique, and Nemesio, in representation of their deceased mother, Juana Justa Monge y Rivera; and his other two granddaughters, Lucía Candelaria and Josefa, in representation of their mother, Emilia Hernández Monge y Jiménez, were declared to be the heirs of Juan del Carmen Monge.

Third. That by deed of July 16, 1895, Rosa Cruz Agosto and Antonio Zechini Veve, the latter representing the Succession of Antonio Zechini García, composed of his widow and four daughters, agreed to exchange two landed estates, one of 18.72 *cuerdas* situated in *barrio* Herrera, municipality of Río Grande; bounded on the north by the estate "María" belonging to the Succession of Antonio Zechini; on the south by lands of the Succession of Juan Monge; on the east by the Espíritu Santo River; and on the west by a channel or the former course of the Río Grande. By private agreement with the other interested parties this property was to be adjudicated in the settlement of the estate of their father, Juan Monge, to the natural children of Rosa Cruz Agosto, to wit, Antonio, Juan, Mercedes, Esteban, and Valeriana Monge y Cruz. The other estate was the property of the Succession of Antonio Zechini y García and was composed of 50 *cuerdas* situated in *barrio* Guzmán Abajo, of the same municipality of Río Grande; bounded on the north by lands of the Succession of Antonio Zechini; on the south and west

by lands of the Succession of Nemesio Jiménez; and on the east by the road leading to the aforesaid *barrio*. The exchange was to be effected as soon as the corresponding adjudiciation in the settlement of the said estate was made to the children of Cruz Agosto, the parties having by agreement valued each of the described estates at the same price.

Fourth. That on May 12, 1897, the heirs of Juan del Carmen Monge, to wit, Tomás, Pedro, and Monserrate Monge; Antonio Zechini, as assignee by right of purchase of the title and interest of Eulalia Monge; José Bloy, representing his daughters, Josefa and Lucía, had by his marriage with the deceased heir, Herminia Monge; Pelegrín Torrales, as representative defensor of the minors, Jesús, Eugenia, Enrique, and Nemesio Sabaud, children of the deceased heir, Justa Monge; and Cruz Agosto, accompanied by her attorney in fact, Rodolfo González, in her character of mother of the minors Antonio, Juan, Mercedes, Esteban, and Valeriana Monge, proceeded to make an inventory of and to appraise, with the assistance of experts, the property left by the deceased, Juan del Carmen Monge. The total value of said property was $2,490.65, and included therein were *78.46 cuerdas of bottom land situated in barrio Herrera; bounded on the east by the Río Grande; on the south by lands of Antonio Zechini; on the north by the course of the Río Viejo and by lands of the said Antonio Zechini, equivalent to 30 hectares, 83 ares and 8 centares, at $28 a cuerda,* the title of ownership of which was not produced at the trial. By agreement the heir, Pedro Monge, was appointed executor and master (*contador-partidor*), all of which acts were stated in an instrument signed by the interested parties in their own behalf, or by others at their request.

Fifth. That on the following day, May 13, the appointed executor and master, Pedro Monge, made the division and adjudication of the estate of Juan del Carmen Monge and reduced the facts to writing, which writing, by way of approval, was also signed by the interested parties, who renounced

all rights in their favor, there having been adjudicated to the heir, Eulalia Monge Jiménez, 9.08 *cuerdas* of the above-described bottom lands, valued at $28 a *cuerda*, and to Antonio, Juan, Mercedes, and Esteban, children of Cruz Agosto, 4.56 *cuerdas;* to Valeriana there were adjudicated 4.57 *cuerdas* of the same land, no statement having been made as to the boundries of the portions adjudicated to Eulalia Monge and to the five children of Cruz Agosto.

Sixth. That Cruz Agosto delivered to Antonio Zechini the parcels of land adjudicated to her five children, receiving in exchange the estate of 50 *cuerdas,* to which the above-mentioned deed of July 16, 1895, refers, together with $625 in cash, the agreement of exchange stated in the said deed being thus fulfilled. No judicial authorization for the contract of exchange or for the execution thereof was obtained.

Seventh. That Cruz Agosto Negrón sold the estate of 50 *cuerdas,* delivered to her by Antonio Zechini, to Manuel Melchor García, who paid the price thereof partly in money and partly by the transfer of a house situated in the town of Carolina. As she had not received a deed of ownership of said estate from the Succession of Zechini, it was agreed that the same should be executed in favor of Manuel Melchor García. This was done by Zechini in his own right and as attorney in fact of his sisters, Josefina, Angela, and María, in a public instrument of June 17, 1902, and which was recorded in the Registry of Property of San Juan. In said document the vendors acknowledged the receipt of $500 paid by the vendee as the purchase price prior to the execution of the deed.

Eighth. That with respect to the lands transferred to the defendants by virtue of the exchange with Rosa Cruz Agosto, Antonio Zechini y Veve, in his own right and as the attorney in fact of his sisters, María, Angela and Josefina, instituted dominion-title proceedings in the District Court of San Juan to establish his title to a rural property of 27.8936 *cuerdas* situated in *barrio* Herrera, municipality of Río Grande, which

property was acquired by him and his sisters four years previously by purchase from Eulalia Monge y Jiménez and Cruz Agosto. The dominion title requested was granted to the Zechini Veve children on March 18, 1901, and recorded in the registry of property on June 17 of the same year.

Ninth. That Tomás Monge, Gerardo Baldrich, and Antonio Zechini, were examined in regard to the annual production of the lands claimed by the plaintiffs. The first stated that the minimum annual rental of said lands is $8 a *cuerda*, though he does not know what they produce; the second stated that if the lands were to be used for the cultivation of cane they should rent for $10 or $12 a *cuerda* per annum; the third stated that for the purpose of planting part to cane and part to pasture and tobacco, etc., the lands could rent, and could have rented even at the time the exchange was made, for $6, $8, or $10 a *cuerda*.

The facts brought out at the trial having been set forth, we are of the opinion that the judgment appealed from does not conform to law. Let us see.

The plaintiffs have title upon which to recover the 13.68 *cuerdas* of land which they claim as theirs.

Said title is the private document regarding the partition of the estate of Juan del Carmen Monge, in which partition four and some hundredths *cuerdas* of an estate of .78 and some hundredths belonging to the deceased, Monge, and situated in the municipality of Río Grande, were adjudicated to each of the plaintiffs.

"A division legally made," says section 1035 of the Revised Civil Code, which is the same as 1068 of the former Civil Code, "confers upon each heir the exclusive ownership of the property which may have been awarded to him." The plaintiffs, Juan del Carmen, Valeriana, and Mercedes Monge y Agosto, therefore, acquired ownership of the lands adjudicated to them by virtue of the partition of the estate of their predecessor in interest, Juan del Carmen Monge. It cannot be alleged that the partition was illegal for lack of

judicial approval, because section 1027 of the Revised Civil Code, which is section 1060 of the Spanish Civil Code and which was in force at the time the partition was made, provides that "If the minors should be subject to the parental authority, and are represented in the division by the father or by the mother, in a proper case, neither judicial intervention nor approval shall be required." Section 1048 of the former Law of Civil Procedure, which exacted such requirement in cases similar to the present, was modified by section 1060 of the former Civil Code already cited.

But even assuming that judicial intervention and approval of the partition of the estate of the deceased, Juan del Carmen Monge, was necessary, the defendant, Antonio Zechini, who intervened therein as assignee of the title and interest of the heir, Eulalia Monge, cannot plead the lack of said requirement to profit by its omission, because in accordance with section 1269 of the Revised Civil Code, which is 1032 of the former Civil Code, persons with capacity cannot plead the incapacity of those with whom they contracted, and Antonio Zechini contracted with the plaintiffs, executing with them and with the other heirs the partition of the estate of the deceased, Juan del Carmen Monge, the former being represented by their mother.

Although the above conclusion is not applicable to the defendants, María, Angela, and Josefina Zechini y Veve, as they did not intervene in the aforesaid partition, they also are prevented from attacking the same for the reason applicable to them and to their brother, Antonio Zechini, that they contracted with said minors, Zechini in his own right and they represented by Zechini, and acquired from the plaintiffs under title of exchange their corresponding shares in the partition.

The contract of exchange executed by the plaintiffs with the four defendants, wherein Zechini acted in his own right and in representation of his sisters, is manifestly null, because section 4 of the Civil Code provides that acts performed

contrary to the provisions of the law are void, except when the law preserves their validity, and section 164 of the Civil Code in force at the time of the acquisition of the lands, subject matter of this litigation, which is 229 of the Revised Civil Code, prescribes that neither the father nor the mother, in a proper case, can alienate the real property of the child the usufruct or administration of which pertained to them, or encumber the same except for justified reasons of utility or necessity and upon authorization of the judge of the district wherein they are domiciled, after hearing the *fiscal* thereof, excepting as the Mortgage Law provides with respect to the effects of transmission.

A similar provision is contained in section 2010 of the Law of Civil Procedure in force at the time of the exchange, and Title V of the Law of Special Legal Proceedings, approved March 9, 1905, treats of the authority over rights and properties of minors. The law approved on March 9 of the current year contains more restrictive provisions on the same subject.

The fact that the defendants had the order of approval made in the dominion-title proceedings, with respect to the lands acquired by them from Cruz Agosto together with those acquired from Eulalia Monge recorded in the registry of property as one estate, has no weight. Such record, according to article 33 of the Mortgage Law, cannot give validity to a contract that was void in accordance with the statutes.

Moreover, the dominion-title proceedings contained a fundamental error, by means of which it was sought in the proper court and in the registry to correct the unamendable defect of lack of judicial authorization. Said error consisted in alleging, as it was alleged, that part of the property to which the proceedings referred had been acquired by purchase from Cruz Agosto, instead of stating that the purchase was made from her as the legal representative of her minor children.

In accordance with the judgment of the Supreme Court

of Spain dated December 30, 1875, in order to acquire securely real property or real rights it is indispensable that the vendor shall not only be the owner thereof, but that he shall have civil capacity to alienate the same; and when the alienation is declared null, the record thereof in the registry of property also becomes null.

The Zechini children acquired from the plaintiffs, who now claim restitution thereof, the 13.68 *cuerdas* of land referred to in the complaint. The latter, as already stated, were owners of said land under lawful title, but as minors they did not have legal capacity to alienate it, and neither could their mother do so without the corresponding judicial authorization. For. this reason the alienation was null and, consequently, the record in the registry of property of the dominion of said lands in favor of the defendants is also null. The latter cannot plead the character of third parties to offset the pretensions of the plaintiffs, inasmuch as they intervened in the prosecution of the recorded dominion-title proceedings, and contracted with the plaintiffs, who were incapacitated to contract.

The contract of exchange being, as it is, null, sections 1270 and 1271 of the Civil Code in force, which are a reenactment of sections 1303 and 1304 of the former Civil Code, are applicable to the case. Said sections read as follows:

"Section 1270. When the nullity of an obligation has been declared, the contracting parties shall restore to each other the things which have been the object of the contract with their fruits, and the value with its interest, without prejudice to the provisions contained in the following sections.

"Sec. 1271. When the nullity arises from the incapacity of one of the contracting parties, the incapacitated person is not obliged to make restitution, except to the extent he has profited by the thing or by the sum he may have received."

In view of such definite provisions, the defendants must restore to the plaintiffs the lands which they claim from them, with the fruits thereof, the latter not being obliged to make

restitution to the former, as it has not been proved that they profited by the exchange. It devolved upon the defendants to prove this.

What are the fruits that must be restored to the plaintiffs with the lands?

To determine the amount received as fruits by the defendants during the 12 years approximately that they have detained the lands claimed from them—that is, from the year 1897, when they were acquired by Zechini, to March 6, 1909, when the complaint was filed—we must consider the testimony of Tomás Monge, Gerardo Baldrich, and of Antonio Zechini himself, and taking it in the sense most favorable to the defendants we may well reach the conclusion that the 13.68 *cuerdas* of land claimed by the plaintiffs must have rendered the defendants, during the 12 years they detained them, the sum of $1,000 at least.

The defendants cannot pretend that the contract of exchange executed by them with Cruz Agosto in representation of the plaintiffs, being, as it is, null, the latter should reimburse them the sum of $6,000, or any other sum, for the reasons specified in their counterclaim, because not having proved that the plaintiffs profited by the exchange, the latter are not obliged to make restitution as prescribed by the above-transcribed section 1271 of the Civil Code.

Neither has dominion of the lands in question been acquired by prescription by the defendants, in accordance with section 1858 of the Civil Code, and as alleged by them in the supplement to their answer, because, although in this case the parties were present and the 10 years of possession required by said section had elapsed, the requirements of good faith and just title necessary for the purpose were lacking.

The plaintiffs having the right, as they have, to recover the 13.68 *cuerdas* of land which they acquired by adjudication made to them in the partition of the estate of their deceased father, and said lands being included in an estate of 27.6936 *cuerdas,* which was the subject of the dominion-title

proceedings recorded in the registry of property in favor of the Zechini children, it becomes necessary, in order that restitution of the same may be made to the former, to make a division of the property of 27.6936 *cuerdas* by segregating the share corresponding to the plaintiffs, the difference remaining in favor of the defendants.

The provisions of section 409 of the Civil Code should be applied in the division of said estate, which to-day belongs, properly and jointly, to the defendants and plaintiffs, though in different proportions.

For the foregoing reasons we are of the opinion that it is proper:

First. To declare the lands claimed as theirs in the complaint to be the property of the plaintiffs.

Second. To declare the nullity of the dominion-title proceedings instituted by the defendants so far as the same relates to the lands claimed.

Third. That a division be made of the lands referred to in the dominion-title proceedings instituted by Zechini, and that the share corresponding to the plaintiffs be determined and specified.

Fourth. That said share, once the same is determined and specified, be restored to the plaintiffs.

Fifth. That the defendants pay to the plaintiffs as reimbursement for the products the sum of $1,000.

Sixth. To declare that the defendants have no right to any reimbursement and should pay the costs originating in the first instance.

The judgment appealed from should be reversed and a judgment rendered containing the aforesaid findings.

*Decided accordingly.*

Justices MacLeary and Wolf concurred.
Justices del Toro and Aldrey did not take part in the decision of this case.